IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOLA BRONSTEIN,<br><br>                Plaintiff,<br><br>   v.<br><br>BAYVIEW LOAN SERVICING, LLC, et al.<br><br>                Defendants. | CIVIL ACTION<br>NO. 18-4223 |

**OPINION**

**Slomsky, J.**                                                                                                    **February 10, 2020**

**I.     INTRODUCTION**

On September 14, 2018, Plaintiff Jola Bronstein filed suit in the Court of Common Pleas of Montgomery County, Pennsylvania, claiming that her house was improperly foreclosed upon because the interest rate she was charged was both erroneous and fraudulently misrepresented in the state court foreclosure complaint. She sued several parties, including: (1) the Bank of New York Mellon formerly known as The Bank of New York, individually and as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-SEA2 ("BONY"), the holder of the promissory note and mortgage; (2) Bayview Loan Servicing, Inc. ("Bayview"), BONY's loan servicer; and (3) Mattleman, Weinroth & Miller, P.C. ("MWM" and together with BONY and Bayview, "Defendants"), the law firm retained by Bayview on behalf of BONY to commence foreclosure proceedings.

On October 1, 2018, BONY and Bayview removed the case to this Court. (Doc. No. 1.) After removal, BONY and Bayview filed an Answer to the Complaint (Doc. No. 3). MWM, the law firm, however, filed a Motion to Dismiss the Complaint (Doc. No. 13) under Federal Rule of

1

Civil Procedure 12(b)(6), which is now ripe for review.[1] For the following reasons, MWM's Motion to Dismiss will be granted in part and denied in part.

## II. BACKGROUND

On May 18, 2007, Plaintiff purchased a house located at 112 Haverford Road, Wynnewood, Pennsylvania 19096 (the "Property"). (Doc. No. 1 at 33.) To finance the purchase, she obtained a $220,000 loan from Castle Point Mortgage, Inc. ("Castle Point"), a mortgage lender and mortgage broker for residential properties. (Id.) In exchange, Plaintiff executed an adjustable rate note (the "Note") that evidenced the loan and obligated Plaintiff to pay Castle Point, or any subsequent holder of the Note, the original principal balance of $220,000 plus interest. (Id.) The same day, to secure the obligations under the Note, Plaintiff executed and delivered a mortgage on the Property (the "Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERSCORP"), solely as nominee for Castle Point.[2] (Id. at 42.) The mortgage was subsequently recorded in the Montgomery County Recorder of Deeds. (Id.)

The Note included an adjustable interest rate, meaning that over the life of the loan, the interest rate would change. (Id. at 14.) From July 1, 2007—Plaintiff's first payment date—until June 1, 2009, the Note's interest rate was fixed at 11.75%. (Id. at 33.) Then, on June 1, 2009, and every six months thereafter—each such date dubbed a "change date"—the interest rate would be

---

[1] For purposes of this Opinion, the Court has considered the Notice of Removal and Plaintiff's Complaint contained therein (Doc. No. 1), Defendant Mattleman, Weinroth & Miller, P.C.'s Motion to Dismiss for Failure to State a Claim (Doc. No. 13), Plaintiff's Response in Opposition (Doc. No. 14), Defendant Mattleman, Weinroth & Miller, P.C.'s Reply in Support of their Motion to Dismiss (Doc. No. 18), and the parties' arguments presented during the hearing held on December 11, 2019 (Doc. No. 20).

[2] Castle Point was the effective holder of the mortgage; however, the nominal mortgage holder was Mortgage Electronic Registration Systems, Inc. ("MERSCORP"). (Doc. No. 13 at 8.) Mortgage loan originators, like Castle Point, often use MERSCORP to serve as the nominal mortgage holder in local government recording offices.

reset. (Id. at 24.) On each change date, the rate would reset to 6.375% plus the most recent six-month U.S. dollar-denominated LIBOR (London Interbank Offered Rate) published in the Wall Street Journal, rounded to the nearest one-eighth of one percent. (Id.) The first reset rate could not be less than 11.750% nor greater than 14.750%, and no subsequent reset rate could increase or decrease more than 1% from the prior change date's interest rate. (Id.)

Alleged here is that Plaintiff stopped making her mortgage payments on December 1, 2010. (Doc. No. 13-1 at 8.) Thereafter, on May 10, 2011, BONY—which is in the business of acquiring and rehabilitating defaulted mortgage loans—purchased Plaintiff's Mortgage. It is unclear if the Mortgage was purchased from Castle Point or another entity, but, in any event, following the sale of the Mortgage, it was assigned by MERSCORP, the nominal mortgage holder, to BONY and recorded in the Montgomery County Recorder of Deeds on June 21, 2011. (Doc. No. 1 at 42.)

Plaintiff allegedly failed to make mortgage payments for the next three years and on May 28, 2014, Bayview sent Plaintiff a notice of their intent to foreclose on the Property, as required under Pennsylvania's Act 91, 35 P.S. § 1680.401 et seq., and Act 6, 41 P.S. § 401 et seq. (the "Foreclosure Notices"). (Doc. No. 1 at 57.) Among other things, the Foreclosure Notices informed Plaintiff that she could cure the default by paying the alleged deficiency in full within thirty days, along with any mortgage payments and late charges that became due during that thirty-day period. (Id. at 58.) A line-item breakdown of the alleged deficiency was provided in each of the Foreclosure Notices and is reproduced below.

| | |
|---|---|
| Total Monthly Payments Due: | $118,672.19 |
| (12/01/2010 – 06/01/2011 @ $3,178.04) | |
| (07/01/2011 – 10/01/2013 @ $2,762.50) | |
| (11/10/2013 – 5/28/2014 @ $2,725.13) | |
| Late Charges: | $1,998.72 |
| Other Charges: | |
|    Uncollected NSF Fees: | $0.00 |
|    Other Fees: | $0.00 |

|  |  |
|---|---|
| Corporate Advance Balance: | $1,624.50 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$122,295.41** |

(Id. at 58, 65.) Notably, under the heading "Total Monthly Payments Due," Plaintiff's monthly mortgage payment changed three times, suggesting that Plaintiff was being charged a variable interest rate.

On July 13, 2016, after Plaintiff did not satisfy the alleged deficiency, BONY, by and through its legal counsel, MWM, initiated a judicial foreclosure proceeding by filing a Complaint in Mortgage Foreclosure in the Court of Common Pleas for Montgomery County, Pennsylvania (the "Foreclosure Complaint"). (Id. at 41.) The Foreclosure Complaint included an updated breakdown of the alleged amounts due on the Mortgage, reflected a fixed interest rate of 11.75%, and is reproduced below.

|  |  |
|---|---|
| Principal Balance | $215,619.44 |
| 11.75% interest from November 1, 2010 through July 1, 2016 at $69.41 per day | $143,566.36 |
| Late Charges | $4,330.56 |
| Escrow Advances – Taxes | $18,821.61 |
| Escrow Advances – Insurance | $10,006.00 |
| Corporate Advances – Property Inspections | $893.50 |
| Corporate Advances – Legal | $1,040.00 |
| TOTAL AMOUNT DUE | $394,277.47 |

(Id. at 43.) The foreclosure action remains pending in state court. (Id. at 11-13.)

On September 14, 2018, Plaintiff sued BONY, Bayview, and MWM, alleging that her debt was misrepresented in the Foreclosure Complaint because

> [d]espite their knowledge of the Adjustable Rate Note and the terms therein, Defendants filed the foreclosure complaint demanding a rate of interest which is in violation of the Note and excessive as well as Bayview continuing to send Plaintiff monthly statements demanding an excessive amount based upon an interest rate which is not stated in the Note [and that] [b]y filing the foreclosure complaint and attendant documents demanding a rate of interest

4

> which is in violation of the Note and excessive, Defendants have
> made false, misleading and deceptive representations to Plaintiff.

(Id. at 17.) In her Complaint, Plaintiff asserted five claims against Defendants: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Count I); (2) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S. § 2270.1, et seq. (Count II); (3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. (Count III); (4) violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601, et seq. (Count IV); and (5) breach of contract. (Id. at 18-30.) MWM is named only in the first three Counts. (See id.)

On July 8, 2019, MWM filed the instant Motion to Dismiss seeking to dismiss all three Counts alleged against it under Federal Rule of Civil Procedure 12(b)(6).[3] With respect to Count I—the alleged violation of the FDCPA—MWM argued that this claim must be dismissed because MWM is not a "debt collector," as defined by the Act, upon whom the statute imposes certain restrictions. (Doc. No. 13-1 at 13-16.) In addition, on Counts II and III—the alleged violations of the FCEUA and the UTPCPL, respectively—MWM argued that Pennsylvania's absolute judicial privilege, which, among other things, immunizes a law firm's statements made in the regular course of judicial proceedings, bars Plaintiff from bringing these state law claims against it. (Id. at 4, 10.)

On July 22, 2019, Plaintiff filed a Response in Opposition to MWM's Motion to Dismiss (Doc. No. 14). In her Response, Plaintiff argued that MWM is a "debt collector" under the FDCPA,

---

[3] On October 10, 2018, the other two Defendants, BONY and Bayview, filed an Answer (Doc. No. 3) asserting, among other things, that the interest rate included in the Foreclosure Complaint was correct because the terms of the Note had been modified from an adjustable rate to a fixed rate of 11.75% before the first change date. (Doc. No. 1 at 5-6; see Doc. No. 3 at 20.)

5

that MWM's actions violated the FDCPA, and because a violation of the FDCPA is a per se violation of Pennsylvania's FCEUA and UTPCPL, that MWM is also liable under those state law statutes. (Id. at 4-6, 12.) Plaintiff also argued that MWM is not immune from liability under Pennsylvania's absolute judicial privilege because their actions concerned debt collection, which is not protected by the privilege and, alternatively, because Pennsylvania's statutory scheme renders any judicial privilege ineffective. (See id. at 15.) MWM filed a Reply on August 12, 2019. (Doc. No. 18.) On December 11, 2019, the Court held a hearing on MWM's Motion to Dismiss, during which the parties recited their respective positions. (See Doc. No. 20.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this

6

Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. ANALYSIS

MWM moves to dismiss all of Plaintiff's claims against it, which arise under the FDCPA and Pennsylvania's FCEUA and UTPCPL. MWM argues that the FDPCA claim must be dismissed because it is not a "debt collector" under the Act, to whom the Act applies. Separately, MWM

7

argues that Plaintiff's Pennsylvania state law claims under the FCEUA and UTPCPL are barred by Pennsylvania's absolute judicial privilege. The Court will consider MWM's arguments in turn.

### A. Count I Will Not be Dismissed Because MWM is a "Debt Collector" Under the FDCPA.

Count I of the Complaint alleges MWM violated multiple provisions of the FDCPA. (Doc. No. 1 at 18.) Plaintiff claims that MWM violated the Act by, among other things, "making false, deceptive, or misleading representation[s] or means in connection with the debt collection[.]" (Id. at 18.) Specifically, Plaintiff alleges MWM violated 15 U.S.C. §§ 1692d, 1692e, 1692c(2), and 1692e(l0), which provide a non-exclusive list of actions that violate the FDCPA. Plaintiff also alleges MWM violated 15 U.S.C. §§ 1692f and 1692f(1) which forbid "us[ing] unfair or unconscionable means to . . . attempt to collect [a] debt."

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015). Only the second prong is disputed here. As noted, MWM argues that Plaintiff's FDCPA claims must be dismissed because they are not a "debt collector," as defined by the Act. The Court disagrees.

The definition of a "debt collector" is provided in Section 1692a(6) of the FDCPA and has two parts: a primary definition and a limited-purpose definition. 15 U.S.C. § 1692(a)(6); see Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1035-36 (2019). The primary definition states that

> [t]he term "debt collector" means any person who uses any
> instrumentality of interstate commerce or the mails in any business
> the principal purpose of which is the collection of any debts, or who

> regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6); Obduskey, 139 S. Ct. at 1036. Parties included under the primary definition are prohibited from engaging in any of the unlawful debt collection practices defined in the FDCPA. Obduskey, 139 S. Ct. at 1036. In contrast, the limited-purpose definition states

> [f]or the purpose of [15 U.S.C. § 1692f(6)], [the] term [debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6); Obduskey, 139 S. Ct. at 1036. Parties covered by limited-purpose definition are only prohibited from engaging in the acts defined in section 1692f(6) of the Act. Obduskey, 139 S. Ct. at 1036.

In the instant case, Plaintiff and MWM agree on certain facts. They agree that Pennsylvania is a judicial foreclosure state and that MWM initiated the judicial foreclosure process when it filed a foreclosure complaint in state court.[4] (See Doc. No. 14 at 9; Doc. No. 21 at 9.) They also agree on the historical understanding of relevant Third Circuit precedent. Specifically, they both acknowledge Kaymark v. Bank of Am., N.A., a Third Circuit case that confirmed that law firms are considered "debt collectors" under the FDCPA's primary definition when they file a foreclosure complaint on behalf of a client in Pennsylvania state court. 783 F.3d 168, 176-77 (3d Cir. 2015) (stating that a law firm "acted as a 'debt collector' when, by filing the [f]oreclosure [c]omplaint, it 'attempt[ed] to collect' a debt on behalf of [its client].") (citing 15 U.S.C. § 1692a(6)).

Plaintiff and MWM disagree, however, about whether Kaymark remains good law following the Supreme Court's ruling in Obduskey. 139 S. Ct. 1029. In Obduskey, the Supreme

---

[4] During the hearing held on December 11, 2019, MWM's counsel, Michael Forbes, Esquire, acknowledged that, "[MWM] fully recognize[s] that Pennsylvania is a judicial foreclosure state[.]" (Doc. No. 21 at 9.)

9

Court held that a law firm that enforced a security interest by initiating a nonjudicial foreclosure on behalf of its client was not a "debt collector" under the FDCPA's primary definition. Id. at 1038. MWM argues that Obduskey's reasoning should be extended to apply to a Pennsylvania judicial foreclosure and, by doing so, this would exempt MWM from the FDCPA's primary definition of "debt collector." (Doc. No. 13-1 at 13-16.) It contends that given the similarities between Colorado's non-judicial foreclosure system—the state where the Obduskey case originated—and Pennsylvania's judicial foreclosure system, "Obduskey is highly persuasive that law firms that judicially enforce mortgages in Pennsylvania do not fall within the [FDCPA's "debt collector"] primary definition[.]" (Id. at 14.) Plaintiff, conversely, argues that Obduskey is inapplicable because Pennsylvania is a judicial foreclosure state and in Obduskey, "the Supreme Court limited [the] exclusion to non-judicial foreclosure actions." (Doc. No. 14 at 9-10.)

The Court will adopt Plaintiff's argument. Despite the well-reasoned and thoughtful arguments of MWM's counsel, the Court declines to extend Obduskey's holding to Pennsylvania's judicial foreclosure system given its express limitation to apply only to nonjudicial foreclosures. See Obduskey, 139 S. Ct. at 1038 ("[I]n this case, [ ] we consider nonjudicial foreclosures. And whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day. . . . [T]he availability of a deficiency judgment is a potentially relevant distinction between judicial and nonjudicial foreclosures."). This decision aligns with the understanding of other district courts in this Circuit, as well as the decisions of the district courts in other Circuits. See e.g., Lloyd v. Pluese, Becker, Saltzman, LLC, No. 18-9420, 2019 U.S. Dist. LEXIS 199214, at *4-5 (D.N.J. Nov. 18, 2019).[5] "Indeed, the few courts to have

---

[5] See also, Berg v. McCalla Raymer Leibert Pierce, LLC, 2019 U.S. Dist. LEXIS 187993, at *6 n.2 (N.D. Ill. Oct. 30, 2019) (explaining that Obduskey's "holding expressly did not affect cases involving judicial foreclosure proceedings"); Gold v. Shapiro, Dicaro & Barak, LLC,

10

considered Obduskey . . . since it was decided have read the decision narrowly, and have specifically distinguished judicial foreclosures from nonjudicial foreclosures." Id. Accordingly, the Court finds that MWM is a "debt collector" under the FDCPA's primary definition and Plaintiff's FDCPA claims are not defeated by Obduskey.

### B. Counts II and III Against MWM Will be Dismissed Because the Claims are Barred by Pennsylvania's Absolute Judicial Privilege.

In Counts II and III, Plaintiff alleges violations of two Pennsylvania statutes. (See Doc. No. 1 at 20, 23.) Specifically, Count II alleges a violation of the FCEUA on the grounds that any violation of the FDCPA by a debt collector also constitutes an unfair or deceptive debt collection act or practice under the FCEUA. (Id. at 20.) Count III alleges a violation of the UTPCPL on the grounds that any unfair or deceptive debt collection act or practice under the FCEUA by a debt collector constitutes a violation of the UTPCPL. (Id. at 23.) MWM argues that these Pennsylvania state law claims must be dismissed because they are barred by Pennsylvania's absolute judicial privilege. The Court agrees.

In Pennsylvania,

> [t]he judicial privilege . . . extends to 'communications [(1)] which are issued in the regular course of judicial proceedings and [(2)] which are pertinent and material to the redress or relief sought.'" Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003) (quoting Post v. Mendel, 507 A.2d 351, 355 (Pa. 1986)). This privilege sweeps broadly to protect "[a]ll communications pertinent to any stage of a judicial proceeding," Binder v. Triangle Publ'ns, Inc., 275 A.2d 53, 56 (Pa. 1971), including "not only . . . communications made in open court, but also . . . pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," Richmond v. McHale, 35 A.3d

---

2019 U.S. Dist. LEXIS 169028, at *16-17 (E.D.N.Y. Sept. 30, 2019) (distinguishing judicial and nonjudicial foreclosures and declining to extend Obduskey's holding to a judicial foreclosure); Flowers v. Baltax 2017, LLC, 2019 U.S. Dist. LEXIS 129347, at *11-12 (D. Md. Aug. 1, 2019) (in an FDCPA case premised on actions taken by a law firm in a judicial foreclosure, holding that "Obduskey does not mandate dismissal of Plaintiff's FDCPA claims.")

11

> 779, 785 (Pa. Super. Ct. 2012) (internal quotation marks and emphasis omitted). Although the judicial privilege most often bars defamation suits, Pennsylvania courts have applied the privilege broadly to confer "immunity from civil liability in the context of judicial proceedings." Moses v. McWilliams, 549 A.2d 950, 956-57 (Pa. Super. Ct. 1988).

Schwartz v. OneWest Bank, FSB, 614 Fed. App'x. 80, 82-83 (3d Cir. 2015).

Pennsylvania's absolute judicial privilege requires that the immunized statements must be made in the course of practicing law. See Yelin v. Swartz, 790 F. Supp. 2d 331, 338 (E.D. Pa. 2011) (explaining that "the mere fact that [a] defendant happens to be an attorney" does not automatically invoke the privilege.) In debt collection cases, context is critical: attorneys engaged in the mere attempt to collect a debt, without more, are not engaged in the practice of law. See id. (attorneys were not practicing law when they sent collection letters on behalf of their client). In comparison, statements made in a state court foreclosure complaint are considered to be "made in connection with the attorney's representation of his client in a judicial proceeding." Schwartz, 614 Fed. App'x at 82-83 (quoting Richmond, 35 A.3d at 786).

Here, Plaintiff's Pennsylvania state law claims against MWM for violations of the FCEUA and UTPCPL must be dismissed because they arise solely from statements MWM made in the state court Foreclosure Complaint and MWM is therefore immunized under Pennsylvania's absolute judicial privilege. Specifically, the FCEUA and UTPCPL claims are predicated on the alleged violation of the FDPCA, which alleges that MWM "misstated that there [was] a default based upon the amount due and misstat[ed] the interest rate" in "the [Foreclosure] Complaint and subsequent pleadings and exhibits[.]" (Doc. No. 1 at 18.) These allegedly-improper statements were made to advance MWM's clients' arguments in favor of obtaining a mortgage foreclosure. Such statements "reflect[] counsel's efforts to share their clients' litigation positions . . . and thus were 'pertinent and material to the redress or relief sought' in the foreclosure case," Schwartz,

12

614 Fed. App'x at 83 (quoting Post, 507 A.2d at 355). As a result, MWM is immunized from liability.

In her Response and during oral argument, Plaintiff did not directly address Pennsylvania's absolute judicial privilege. Instead, she attacks the privilege by arguing that Pennsylvania's statutory framework denies MWM immunity. (See Doc. No. 21 at 31.) Specifically, Plaintiff argues that "the reason [MWM is] not immunized from [liability] is because of the per se violations under 73 P.S. § 2270.4, that a violation of the FDCPA is a violation of the [FCEUA] and . . . a violation of the [FCEUA] is a violation of the [UTPCPL]." (Id. at 31.) Plaintiff is incorrect. "Pennsylvania law has long held that '[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse.'" Greenberg v. McGraw, 161 A.3d 976, 981 (Pa. Super. 2017) (quoting Smith v. Griffiths, 476 A.2d 22, 24 (Pa. Super. 1984)). Absolute privilege, as its name implies, is precisely that: absolute; it provides a complete defense to an otherwise plausible cause of action, even when the offense is a per se violation. See e.g., Matson v. Margiotti, 88 A.2d 892 (Pa. 1952) (holding that the Pennsylvania State Attorney General's absolute privilege provided immunity from civil suit, despite his statements being libelous per se). Put simply, Pennsylvania's absolute judicial privilege is not defeated by the State's FDCPA-correlative statutory scheme. See id. Accordingly, the Court will dismiss Plaintiff's FCEUA and UTPCPL claims against MWM because MWM is immunized from these claims under Pennsylvania's absolute judicial privilege.

## V.  CONCLUSION

For the foregoing reasons, MWM's Motion to Dismiss (Doc. No. 13) will be granted in part and denied in part. Plaintiff's claims under the Pennsylvania FCEUA and UTPCPL against

13

MWM will be dismissed with prejudice. However, the Court will deny MWM's Motion to Dismiss as it relates to Plaintiff's FDCPA claim. An appropriate Order follows.